UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Case No. 14bk01361 |
| Joseph Sneed, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |
| ——————————————— | ) | |
| | ) | |
| Hassan Muhammad, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. 14ap00098 |
| v. | ) | |
| | ) | |
| Joseph W. Sneed, | ) | Judge Timothy A. Barnes |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

TIMOTHY A. BARNES, Judge

MEMORANDUM DECISION

The matter before the court arises out of the Second Amended Adversary Complaint Objecting to the Discharge of Debt Owed to the Plaintiff [Adv. Dkt. No. 32] (the "Complaint"), filed by Hassan A. Muhammad (the "Plaintiff") in the above-captioned adversary proceeding (the "Adversary"), seeking a determination of dischargeability of debt under section 523(a)(2)(A) of the Bankruptcy Code (as defined below) against the debtor, Joseph W. Sneed (the "Debtor") in connection with the parties' business and personal relationship of more than 20 years.

The matter was tried before the court in a two-day trial that took place on September 22, 2015 and September 23, 2015 (the "Trial"). For the reasons set forth herein, the court holds that the debt is dischargeable by the Debtor, and finds in favor of the Debtor on all Counts of the Complaint.[1]

This Memorandum Decision constitutes the court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). A separate order will be entered pursuant to Bankruptcy Rule 9021.

---

[1]    There is some confusion over exactly what those counts are, which is discussed in more detail below.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the United States Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). A proceeding for determination of the dischargeability of a particular debt only may arise in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(I); *Birriel v. Odeh (In re Odeh)*, 431 B.R. 807, 810 (Bankr. N.D. Ill. 2010) (Wedoff, J.); *Baermann v. Ryan (In re Ryan)*, 408 B.R. 143, 151 (Bankr. N.D. Ill. 2009) (Squires, J.).

While none of the parties have raised the issue of whether this court has constitutional authority to enter a final judgment on all counts of the Complaint in light of the United States Supreme Court's decision in *Stern v. Marshall*, 564 U.S. ---, 131 S. Ct. 2594 (2011), this court has an independent duty to determine whether it has such authority. *Rutkowski v. Adas (In re Adas)*, 488 B.R. 358, 379 (Bankr. N.D. Ill. 2013) (Hollis, J.).

The Complaint is based on section 523(a)(2)(A) of the Bankruptcy Code. Section 523 is unequivocally a bankruptcy cause of action. While such actions may turn on state law, determining the scope of a debtor's discharge is a fundamental part of the bankruptcy process. *See Deitz v. Ford (In re Deitz)*, 469 B.R. 11, 20 (B.A.P. 9th Cir. 2012). As observed by one bankruptcy court, "there can be little doubt that [a bankruptcy court], as an Article I tribunal, has the constitutional authority to hear and finally determine what claims are non-dischargeable in a bankruptcy case." *Farooqi v. Carroll (In re Carroll)*, 464 B.R. 293, 312 (Bankr. N.D. Tex. 2011); *see also Deitz*, 469 B.R. at 20; *White Eagle, Inc. v. Boricich (In re Boricich)*, 464 B.R. 335, 337 (Bankr. N.D. Ill. 2011) (Schmetterer, J.).

As nondischargeability is a core proceeding that arises under the Bankruptcy Code, it is within the court's core jurisdiction. *See* 28 U.S.C. § 157(b)(1). Under existing Supreme Court precedent, there is no question as to the court's authority to hear and determine such claims. *See generally Stern*, 564 U.S. ---, 131 S. Ct. 2594.

Accordingly, final judgment is within the scope of the court's authority.

## SUMMARY OF ISSUES PRESENTED

The Plaintiff seeks a determination that debts allegedly owed by the Debtor are nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code. Having obtained a state court judgment, the Plaintiff alleges that the debts represented by that judgment and related orders were obtained through false pretenses, false representation or actual fraud. The Plaintiff further alleges that a separate but related mechanics lien obligation was equally obtained through false pretenses, false representation or actual fraud. While the Debtor appears to be obligated on the debts, the

2

Plaintiff did not prove by a preponderance of the evidence that the debts were incurred by false pretenses, false representations or actual fraud. As a result, the debts are dischargeable.

## PROCEDURAL HISTORY

In considering the relief sought by the Plaintiff, the court has considered the evidence and argument presented by the parties at the Trial, has reviewed the Complaint, the attached exhibits submitted in conjunction therewith, and has reviewed and found each of the following of particular relevance:

(1)  Debtor's Answer to Second Amended Adversary Complaint Objecting to the Discharge of Debt Owed to the Plaintiff [Adv. Dkt. No. 40] (the "Answer");

(2)  Final Pretrial Order Governing Complaint Objecting to Debtor's Discharge and Dischargeability of Particular Debt [Adv. Dkt. No. 66] (the "Final Pretrial Order");

(3)  Joint Pretrial Statement and related filings [Adv. Dkt. No. 70] (the "Joint Pretrial Statement");

(4)  Debtor's Proposed Findings of Fact and Conclusions of Law [Adv. Dkt. No. 73];[2]

(5)  Plaintiff's Proposed Findings of Fact and Conclusions of Law [Adv. Dkt. No. 74]; and

(6)  Plaintiff's Closing Statement [Adv. Dkt. No. 75].

The court has also considered the procedural history and previous court filings in this Adversary, including:

(a)  Plaintiff's Verified Adversary Complaint Objecting to the Discharge of Debt Owed to the Plaintiff [Adv. Dkt. No. 1];

(b)  Plaintiff's Motion for Entry of Default [Adv. Dkt. No. 5];

(c)  Debtor's Motion for More Definite Statement [Adv. Dkt. No. 7];

(d)  Plaintiff's First Amended Adversary Complaint Objecting to the Discharge of Debt Owed to the Plaintiff [Adv. Dkt. No. 14];

(e)  Order Mooting Motion for More Definite Statement [Adv. Dkt. No. 17];

(f)  Order Denying for the Reasons Stated on the Record Motion for Entry of Default [Adv. Dkt. No. 18];

(g)  Debtor's Motion to Dismiss Adversary [Adv. Dkt. No. 19] (the "Motion to Dismiss");

---

[2]  Docket 73 as filed by the Debtor in actuality contained several additional items. Following the proposed findings of fact was the Debtor's proposed Conclusions of Law; attached as an exhibit was the Debtor's Closing Statement Following Trial.

(h)    Plaintiff's Motion for Entry of Default [Adv. Dkt. No. 20];

(i)    Plaintiff's Response to Debtor's Motion to Dismiss [Adv. Dkt. No. 25];

(j)    Debtor's Reply to Plaintiff's Response to Debtor's Motion to Dismiss [Adv. Dkt. No. 27];

(k)    Order Denying Motion for Entry of Default [Adv. Dkt. No. 30];

(l)    Order Granting in Part and Denying in Part Motion to Dismiss [Adv. Dkt. No. 31] (the "Partial Dismissal Order");

(m)    Order Withdrawing Motion to Dismiss Adversary [Adv. Dkt. 43];

(n)    Plaintiff's Motion for Summary Judgment and related filings [Adv. Dkt. No. 44];

(o)    Debtor's Response Opposing Plaintiff's Motion for Summary Judgment and related filings [Adv. Dkt. No. 45]; and

(p)    Order Denying Motion for Summary Judgment [Adv. Dkt. No. 49].

Though the foregoing items do not constitute an exhaustive list of the filings in the Adversary, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 1989) (Goldgar, J.) (recognizing same).

## ADDITIONAL PROCEDURAL POSTURE

The original complaint included claims under sections 523(a)(2)(A) and (a)(2)(B) and sections 727(a)(4) and (a)(5) of the Bankruptcy Code. The Debtor sought in his Motion to Dismiss to have all of these claims dismissed.[3] The Motion was granted as to claims under section 523(a)(2)(B) and sections 727(a)(4) and (a)(5) of the Bankruptcy Code, but was denied as to the claim under section 523(a)(2)(A). Thus, the sole remaining claim that went to Trial, as noted above, is a claim under section 523(a)(2)(A).

---

[3]    One thing the Motion to Dismiss did not do, surprisingly, is assert the grounds asserted by the defendant in another of the Plaintiff's nondischargeability adversaries. *See Muhammad v. Reed*, 532 B.R. 82, 89-92 (Bankr. N.D. Ill. 2015) (Barnes, J.). In *Reed*, the Defendant asked the court to dismiss the cause of action on grounds that the Plaintiff inappropriately took assignment of the debt in that case to litigate *pro se* on behalf of an entity that could not proceed on its own. The court noted that the Seventh Circuit has ruled that public policy forbids "assignment of claims to a *pro se* litigant solely for the purpose of litigating...." *Id.* at 89. While the court held that the defendant in *Reed* failed to adduce sufficient evidence to succeed with this theory on the assignment specifically at issue therein, the defendant did successfully link the Plaintiff to multiple entities, including those at issue in the present case. *Id.* at 91-92. Despite the court's published ruling in *Reed*, the Debtor did not seek relief on these grounds in this matter, and this court will not therefore *sua sponte* act in this regard.

Prior to the Trial the court issued the Final Pretrial Order, which stated that any exhibit proposed in the Joint Pretrial Statement to which an objection was not raised in the Joint Pretrial Statement would be received in evidence without an offer during the Trial. At the Trial, all of the Debtor's exhibits were therefore admitted in the absence of such an objection from the Plaintiff. Similarly, all of the Plaintiff's exhibits in the Joint Pretrial Statement were also admitted. The Plaintiff attempted to introduce additional exhibits at the Trial (Exhibits No. 27-28). These exhibits were not included, however, in the Joint Pretrial Statement and the Debtor objected to their admission based on the impropriety of their late disclosure and lack of probative value. The court sustained the Debtor's objections and Exhibit Nos. 27-28 were excluded.

At the conclusion of the Trial, the Debtor moved for a directed verdict. In response, the court requested posttrial briefing from both parties. The court's ruling on the motion for directed verdict is subsumed into this Memorandum Decision.

## BACKGROUND

This Adversary arises out of a dispute between the Debtor and the Plaintiff involving real property located at 4852 S Ashland Avenue, Chicago, Illinois (the "Property").

In March 2006, the Debtor purchased the Property. At or around that time, he represented to the Plaintiff that he (the Debtor) was the sole owner. In July 2006, he offered the Plaintiff half ownership of the Property on the condition that they would refurbish it together as co-owners. Nonetheless, the Debtor never transferred half ownership of the Property to the Plaintiff.

In March 2007, the Debtor contracted with TIB Services, Inc. ("TIB"), a construction business owned by the Plaintiff's wife, Maria Bailey ("Bailey"), to purchase construction materials and for labor to rehabilitate the Property. TIB performed but was not paid, and on or about January 15, 2008, Bailey, on behalf of TIB, filed and recorded a $78,000.00 mechanics lien against the Property. On that same date, Bailey, on behalf of herself and TIB, assigned both her and TIB's interest to the Plaintiff.

From 2007 to 2012, the Plaintiff was also associated with numerous businesses operating at the Property, including: (1) Great Finishes, Inc.; (2) Mother's Touch Home Health ("Mother's Touch"); (3) Master's Medical Billing; (4) TIB Services, Inc.; (5) A&H Caring Connections, Inc.; (6) The Law Office of Raymond J. Sanders; (7) The Law Office of Emmit Marshall; and (8) 4852 S. Ashland, Inc.

In September 2012, the Debtor was injured in a car accident and was bedridden for several months. During that period, the Plaintiff was locked out of and ejected from the Property by the Debtor's family and agents. But for the resulting litigation, this appears to be the end of the Plaintiff's and the Debtor's dealings with each other.

The Plaintiff filed several court actions against the Debtor in the Circuit Court of Cook County, Illinois (the "State Court"). These included Case No. 12 CH 42455 (the "Ejectment Litigation") and Case No. 12 L 066076 (the "Fraud Litigation"). It appears that TIB also assigned its claims in those actions to the Plaintiff prior to commencement of those actions.

In the Ejectment Litigation, the State Court found that the Debtor had unlawfully locked out, evicted and ejected the plaintiff, Mother's Touch, in violation of state law. On June 6, 2013, the

Debtor admitted that he had taken self-help steps to evict Mother's Touch in violation of the Illinois Forcible Detainer Act. On November 5, 2013, the State Court found the Debtor liable for $5,219.00: $1,351.00 in business property; $1,000.00 for lost photographs; and $2,868.00 for attorney's fees.

In the Fraud Litigation, the Plaintiff (also the plaintiff that litigation) alleged that the Debtor committed fraud and deceptive practices against him. On September 24, 2013, the State Court entered an agreed order providing that the Debtor would transfer 50% ownership in the property to the Plaintiff by October 15, 2013 and would be responsible for half of the TIB mechanics lien, which Bailey had assigned on her and TIB's behalf to the Plaintiff in her role as owner of TIB. Pursuant to the agreed order, the Plaintiff withdrew his other complaints against the Debtor, including his complaints in the Ejectment Litigation. On September 30, 2013, in another agreed order, the mechanics lien was reduced through binding arbitration to $60,000.00, with the Debtor responsible for $30,000.00. The Debtor did not comply with the agreed orders and was sanctioned twice for $1,000.00 ($2,000.00 in total), on October 15, 2013 and November 25, 2013, respectively.

Importantly, in neither the Ejectment Litigation nor the Fraud Litigation did the State Court make any finding of fraud nor did the agreed orders address the allegation of fraud. It does not appear that the orders were appealed.

On January 17, 2014, the Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code, Case No. 14bk01361, and on February 11, 2014, the Plaintiff commenced this Adversary. The Plaintiff seeks a finding that the aforementioned debts are not dischargeable under section 523(a)(2)(A) of the Bankruptcy Code because the debts were procured through actual fraud, false representation or false pretenses.

FINDINGS OF FACT[4]

From the review and consideration of the procedural background, as well as the evidence presented at the Trial (and in light of the court's evidentiary rulings above), the court determines the salient facts to be as follows, and so finds that:

A. The Parties

   (1)   The Debtor is an individual domiciled in Chicago, Illinois.

   (2)   For the past 20 years, the Debtor's primary business has been working for the City of Chicago in the Department of Revenue.

   (3)   The Debtor is also a licensed real estate broker and has been involved in various business ventures.

   (4)   The Plaintiff is an individual domiciled in Chicago, Illinois.

---

[4]     To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are adopted as such. Adjudicative facts may also be found and determined later in this Memorandum Decision.

(5)   For the past 20 to 25 years, the Plaintiff's primary business has been in real estate and varied business ventures.

(6)   Over the years, the Plaintiff and the Debtor worked together and assisted each other with regard to political causes and various business opportunities, including the purchase, renovation and sale of various parcels of real estate.

(7)   The various business relationships between the Plaintiff and the Debtor were not always reduced to writing.

B. Property

(8)   In March 2006, the Debtor informed the Plaintiff that he had purchased the Property.

(9)   In March 2006, the Debtor, the Plaintiff and their mothers formed a corporation called 4852 S. Ashland Inc. (in 2010, d/b/a Ashland Convenience Food and Liquors) that operated a convenience store located on the Property.  The two mothers equally owned 50% of the interests and shares in the corporation.

(10)  In July 2006, the Debtor offered the Plaintiff half ownership of the Property on the condition that they would together refurbish the Property as co-owners.

(11)  In March 2007, the Debtor contracted with TIB Services, a construction business owned by Bailey, to purchase construction materials and for labor to renovate the Property.

(12)  Bailey and the Debtor reduced the agreement between TIB and the Debtor to writing, but Bailey did not require that the Debtor produce documentation as to ownership of the Property.

(13)  On or about January 15, 2008, Bailey on behalf of TIB recorded a $78,000.00 mechanics lien against the Property.

(14)  In August 2011, the Plaintiff's mother died, and her last will and testament bequeathed him half ownership in 4852 S. Ashland Inc.

(15)  At all relevant times, the Debtor was sole owner of record of the Property.

(16)  The Debtor never recorded any instrument transferring half ownership of the Property to the Plaintiff.

(17)  On November 12, 2012, the Plaintiff was locked out of the Property by individuals purportedly representing the Debtor.

C. State Court Litigation

(18)  On December 5, 2012, the Plaintiff filed the Ejectment Litigation in State Court seeking to recover damages for illegal eviction and ejectment from the Property, as well as loss, deferred, and back wages, from the Debtor.

(19) The Plaintiff alleged that the Debtor was responsible for his unlawful ejectment and lockout from the Property, as well as for fraud and deceptive practices.

(20) In the Ejectment Litigation, the Debtor counterclaimed for $35,000.00 in unpaid rent from December 2007 to December 2012.

(21) On December 5, 2012, the court issued an *ex parte* temporary restraining order and found that the Debtor had unlawfully locked out, evicted and ejected plaintiff in that litigation in violation of state law.

(22) On September 24, 2013, Judge Thomas R. Mulroy, Jr. approved the agreed order in the Fraud Litigation, in which the Plaintiff and the Debtor agreed to a number of actions, including dismissal of all pending cases, including the Ejectment Litigation and Fraud Litigation. The order also provided that the Plaintiff and the Debtor would each be half owners in the corporation as well as the Property. Both parties were also ordered to share equal responsibility for utility debts for the Property, the TIB debt and the Mother's Touch debt.[5]

(23) On September 30, 2013, Judge Mulroy approved an additional agreed order reducing TIB's lien to $60,000.00, with the Plaintiff and the Debtor responsible for $30,000.00 each.

(24) The Debtor was sanctioned by Judge Mulroy on two separate occasions (October 15, 2013 and November 25, 2013) for failure to abide by the agreed orders in the Fraud Litigation. In each instance the sanction was $1,000.00.

(25) On November 25, 2013, Judge Sophia H. Hall issued a five page written finding (the "State Court Decision") in the Ejectment Litigation.[6] Judge Hall found in favor of Mother's Touch concerning the wrongful ejectment, the final issue not resolved in the pretrial settlement conference. Judge Hall found that Mother's Touch had an enforceable lease and that the Debtor was liable for wrongful ejectment. She found in favor of Mother's Touch regarding the Debtor's counterclaim, finding no evidence in support of the counterclaim for back rent.

(26) In the Ejectment Litigation, Judge Hall found that the Debtor was liable for damages for $5,219.00: $1,351.00 in business property; $1,000.00 for lost photographs; and $2,868.00 for attorney's fees.

(27) With respect to the Debtor specifically, Judge Hall found in relevant part as follows:

> *Plaintiff had an enforceable lease and was ejected from the property by defendant Sneed's agents who had his power of attorney and who were his sisters. The court believes that defendant Sneed knew of this ejectment, either at the time or soon after the act, and did nothing to remedy the situation. Consequently defendant Sneed is liable for the damages caused by ejecting this lawful tenant having a valid lease from its business premises.*

---

[5]   *Muhammad v. Sneed and Sneed*, No. 12 L 66076 (Ill. Cir. Ct. Sept. 24, 2013) (the Fraud Litigation).

[6]   *Mother's Touch Home Health, Inc. v. Park Nat'l Bank, Trust #OP13394, Joseph Sneed as Trust Beneficiary, and Unknown Agents*, No. 12CH42455 (Ill. Cir. Ct. Nov. 5, 2013) (the Ejectment Litigation).

APPLICABLE LAW

A.    Nondischargeability

The Complaint asserts claims under section 523(a)(2)(A) of the Bankruptcy Code in relation to multiple debts.

The Plaintiff alleges that the Debtor's actions and omissions constitute false misrepresentations, false pretenses or actual fraud with respect to the Plaintiff, standing in the place of TIB as the assignee of TIB's mechanics lien against the Property. More specifically, the Plaintiff alleges that the Debtor, in requesting construction services from TIB on the Property, omitted the material fact that the Plaintiff was not a co-owner of the Property, fraudulently inducing TIB to provide services, for which the debt was incurred. As the claim is brought by the Plaintiff as the assignee of TIB's mechanics lien, the court must therefore inquire into false representations, false pretenses, or actual fraud by the Debtor against TIB.

The other debt amounts appear to stem from the Ejectment Litigation damages award and from sanctions owing to the Debtor's refusal to follow the agreed orders from the Ejectment and Fraud Litigations. To award judgment in favor of the Plaintiff, this court must find the existence of false pretenses, false representation(s), or actual fraud and find that such fraud is attributable directly or indirectly to the Debtor. *See Wachovia Sec., LLC v. Jahelka (In re Jahelka)*, 442 B.R. 663, 668 (Bankr. N.D. Ill. 2010) (Goldgar, J.).

The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *Goldberg Secs., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992); *Harris Trust and Savings Bank v. Gunsteen (In re Gunsteen)*, 487 B.R. 887, 899 (Bankr. N.D. Ill. 2013) (Schmetterer, J.). A creditor must meet this burden by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *see also In re McFarland*, 84 F.3d 943, 946 (7th Cir. 1996). To further the policy of providing a debtor a fresh start, exceptions to the discharge of a debt are to be construed strictly against a creditor and liberally in favor of a debtor. *See In re Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998); *Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir. 1994).

1.    11 U.S.C. § 523(a)(2)(A)

Section 523 enumerates specific, limited exceptions to the dischargeability of debts. Section 523(a)(2)(A) provides, in relevant part, that an individual debtor is not discharged from any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition….

11 U.S.C. § 523(a)(2)(A).

First, a plaintiff must establish that the debtor owes him a debt. *See Zirkel v. Tomlinson (In re Tomlinson)*, Adv. No. 96 A 1539, 1999 WL 294879, at *7 (Bankr. N.D. Ill. May 10, 1999) (Katz, J.).

9

In this instance, while the Plaintiff's exact claims aren't clear, there is sufficient information that these are debts that are owed.[7] The Debtor does not dispute that he is personally liable on the mechanics lien, for example. The Debtor lists $37,219.00 in debt on his Schedule F of his Chapter 13 petition and lists the Plaintiff as the debt holder. At the Trial, the Debtor acknowledged that he knew of both Bailey and TIB and that he had signed a document confirming and acknowledging that the material and work performed at the Property were "completed in a substantial workmanlike manner." Tr. 55, Sept. 22, 2015. As a result of the state court decision finding in favor of the Plaintiff in the Fraud Litigation, the Debtor was ordered to pay $30,000.00 and was subsequently sanctioned $1,000.00 on two separate occasions for failure to cooperate. The Debtor was also found liable for damages in the Ejectment Litigation in the amount of $5,219.00. Therefore, it does appear that the Debtor is personally liable for the TIB mechanics lien, the ejectment damages, and the court sanctions.

Second, a plaintiff must show that the debt falls within one of the specified grounds under section 523(a)(2)(A). *Jahelka*, 442 B.R. at 668. Three separate grounds for holding a debt to be nondischargeable are included under section 523(a)(2)(A): false pretenses, false representation or actual fraud. *Id.*; *see also Deady v. Hanson (In re Hanson)*, 432 B.R. 758, 771 (Bankr. N.D. Ill. 2010) (Squires, J.) (*citing Bletnitsky v. Jairath (In re Jairath)*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001) (Goldgar, J.)).

    a.      False Representation and False Pretenses

To except a debt from discharge under section 523(a)(2)(A) based on false pretenses or a false representation, the creditor must establish the following elements: (1) the debtor made a false representation or omission of fact; (2) which the debtor (a) knew was false or made with reckless disregard for its truth, and (b) made with an intent to deceive; and (3) upon which the creditor justifiably relied. *Reeves v. Davis (In re Davis)*, 638 F.3d 549, 553 (7th Cir. 2011); *see also Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010); *In re Bero*, 110 F.3d 462, 465 (7th Cir. 1997); *Jahelka*, 442 B.R. at 668-69. A creditor must establish all three elements to support a finding of false pretense or false representation. *Ryan*, 408 B.R. at 156; *see also Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 700 (Bankr. N.D. Ill. 2002) (Squires, J.). Failure to establish any one fact is outcome determinative. *Hanson*, 432 B.R. at 771 (*citing Jairath*, 259 B.R. at 314).

Under section 523(a)(2)(A), a false representation is an express misrepresentation that can be demonstrated by a spoken or written statement but must also be demonstrated through conduct. *See Scarpello*, 272 B.R. at 700; *Nite Lite Signs & Balloons, Inc. v. Philopulos (In re Philopulos)*, 313 B.R. 271, 281 (Bankr. N.D. Ill. 2004) (Schmetterer, J.); *New Austin Roosevelt Currency Exch., Inc. v. Sanchez (In re Sanchez)*, 277 B.R. 904, 908 (Bankr. N.D. Ill. 2002) (Schmetterer, J.). Thus a spoken or written statement is not required for a false representation, so "[a] debtor's silence regarding a material fact can constitute a false representation under § 523(a)(2)(A)." *Hanson*, 432 B.R. at 772 (internal quotation omitted); *see also Scarpello*, 272 B.R. at 700. "A debtor's failure to disclose pertinent information may be a false representation where the circumstances imply a specific set of facts and disclosure is necessary to correct what would otherwise be a false impression." *Ryan*, 408 B.R. at

---

[7]    At the Trial, the Plaintiff testified on cross-examination that $37,219.00 was the correct debt amount and that the amount he was claiming of $36,756.26 accounted for partial payments already made to him by the Debtor. Tr. 158, Sept. 23, 2015.

157 (*citing Trizna & Lepri v. Malcolm (In re Malcolm)*, 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992) (Wedoff, J.)).

In contrast, "[f]alse pretenses in the context of section 523(a)(2)(A) include implied misrepresentations or conduct intended to create or foster a false impression." *Media House Productions, Inc. v. Amari (In re Amari)*, 483 B.R. 836, 846 (Bankr. N.D. Ill. 2012) (Schmetterer, J.) (*citing Sterna v. Paneras (In re Paneras)*, 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996) (Squires, J.)). The implication arises when a debtor, with the intent to mislead a creditor, engages in "a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, ... or understanding of a transaction, in which [the] creditor is wrongfully induced by [the] debtor to transfer property or extend credit to the debtor ...." *Paneras*, 195 B.R. at 406 (internal quotations omitted); *see also Amari*, 483 B.R. at 846.

A false pretense does not necessarily require overt misrepresentations. *Paneras*, 195 B.R. at 406. "Instead, omissions or a failure to disclose on the part of the debtor can constitute misrepresentations where the circumstances are such that omissions or failure to disclose create a false impression which is known by the debtor." *Id.*; *see also Hanson*, 432 B.R. at 771 (finding that a false pretense is "established or fostered willfully, knowingly and by design; it is not the result of inadvertence").

An element common to a false representation and false pretenses is reliance. The United States Supreme Court has clarified that section 523(a)(2)(A) requires only a showing of "justifiable" reliance. *See Field v. Mans*, 516 U.S. 59, 73-75 (1995); *see also Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 673 (7th Cir. 1995). Justifiable reliance is a less demanding standard than reasonable reliance and "does not mean that [the creditor's] conduct must conform to the standard of the reasonable man." *Paneras*, 195 B.R. at 406 (*quoting Field*, 516 U.S. at 71). Rather, justifiable reliance "requires only that the creditor did not 'blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Ojeda*, 599 F.3d at 717 (*quoting Field*, 516 U.S. at 71).

Whether a party justifiably relies on a misrepresentation is "determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff." *Id.*; *see also Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002) (Schmetterer, J.). "[A] person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" *Mercantile Bank v. Canovas*, 237 B.R. 423, 429 (Bankr. N.D. Ill. 1998) (Lefkow, J.) (*quoting Field*, 516 U.S. at 70). "However, a plaintiff may not bury his head in the sand and willfully ignore obvious falsehoods." *Johnston v. Campbell (In re Campbell)*, 372 B.R. 886, 892 (Bankr. C.D. Ill. 2007) (internal quotations omitted).

Several courts in this Circuit have determined that "[t]o satisfy the reliance element of § 523(a)(2)(A), the creditor must show that the debtor made a material misrepresentation that was the cause-in-fact of the debt that the creditor wants excepted from discharge." *Scarpello*, 272 B.R. at 700; *see also Mayer*, 51 F.3d at 676 ("reliance means the conjunction of a material misrepresentation with causation in fact"); *Hanson*, 432 B.R. at 773. Accordingly, these courts have required the plaintiff to show that the debtor's conduct proximately caused the plaintiff's loss, thus making proximate cause an additional requirement under section 523(a)(2)(A). *See Heptacore, Inc. v. Luster (In re Luster)*, 50 F. Appx. 781, 784 (7th Cir. 2002); *Tomlinson*, 1999 WL 294879, at *7; *Microtech Int'l v. Horwitz (In re Horwitz)*, 100 B.R. 395, 397-398 (Bankr. N.D. Ill. 1989) (Katz, J.).

11

In the Complaint, the Plaintiff alleges that the Debtor made false representations both affirmatively and by omission to induce the Plaintiff to provide financing for construction labor and materials (the TIB mechanics lien) on the Property. Specifically, the Plaintiff alleges: (a) that the Debtor lied and then failed to disclose that the deed to the Property did not include the Plaintiff as a co-owner before obtaining construction services from TIB to rehab the Property; (b) that the Debtor never intended to add the Plaintiff to the Property deed; and (c) that the Debtor's misrepresentations induced TIB to perform construction services on the Property.

The Plaintiff contends that the Debtor intended to deceive and defraud him and argues that he would not have incurred responsibility for construction services or incurred other obligations with respect to the Property but for the Debtor's misrepresentation.

In the Plaintiff's Proposed Findings of Fact and Conclusions of Law [Adv. Dkt. No. 74], he asks the court to find that the Debtor promised to file and record a quit claim deed, but the Plaintiff offered no proof of this fact at the Trial, other than the Plaintiff's own, self-serving testimony. On cross-examination, the Plaintiff testified that he moved several businesses to the Property and that he and the Debtor proceeded as though they were joint owners.[8] Tr. 170-71, Sept. 23, 2015. The Plaintiff also testified that he had seen a deed in writing transferring half ownership to him, Tr. 179, Sept. 23, 2015, but the Plaintiff did not produce any evidence of the documentation. The Plaintiff did assert that if the Debtor was not going to add the Plaintiff to the Property's deed as co-owner, TIB would not have performed construction services and the Plaintiff would not have incurred obligations regarding the Property. Tr. 180-81, Sept. 23, 2015.

While the Plaintiff argued that TIB would not have performed the construction services if the Debtor had not deceived him regarding the Plaintiff's ownership status, Tr. 221, Sept. 23, 2015, Bailey testified only that while she preferred to have things in black and white, the Plaintiff had assured her that the Debtor was trustworthy. Tr. 119, Sept. 22, 2015. She did not testify that the Debtor told her that the Plaintiff was a co-owner, and she did not allege that she would not have provided the construction services if the Plaintiff was in fact not a co-owner. *See* Tr. 119, Sept. 22, 2015.

At the Trial, the Debtor denied that he made any promises regarding the deed and payment on TIB's services. Tr. 188-201, Sept. 22, 2015. Further, despite the Plaintiff's allegations, on direct examination, the Debtor testified that in a previous real estate project the Plaintiff joined him as a co-owner on the Property, but nothing was reduced to writing. Tr. 40-41, Sept. 22, 2015. This gives the appearance that the Plaintiff was consistently lax in his dealings, at least so far as they concerned the Debtor.

The Plaintiff also failed to provide any proof that the Debtor made any misrepresentations directly to TIB. As the debt was incurred between the Debtor and TIB, even if the Plaintiff had proven that the Debtor made misrepresentations to him, in order to find the debts dischargeable, the Plaintiff would have had to show how those misrepresentations caused TIB to justifiably rely. As noted above, Bailey's testimony was not sufficient to prove such reliance.

---

[8]     The Plaintiff rested his presentation without addressing these issues, which were only directly addressed on cross-examination.

Nor are the Plaintiff's allegations regarding the Debtor's post-judgment conduct prevailing. While it is true that the court fines may be considered debts that arose later in time and thus might independently be shown to have triggered section 523(a)(2)(A), the Plaintiff has failed to make any showing that the conduct by which the Debtor was sanctioned was the result of any misrepresentation or false pretenses. The Complaint alleges only that the Debtor was sanctioned for refusing to follow the agreed orders.

The court has considered each of the foregoing allegations in light of the facts adduced at the Trial and determined by the State Court, and concludes that the Plaintiff has not established that the Debtor made, with knowledge of his falsity or reckless disregard for the truth, misrepresentations or omissions of fact related to a fraudulent scheme. The court further concludes that whatever misrepresentations or omissions of fact may have been made were not shown to have induced TIB Services to provide construction services and labor. The court concludes that TIB did not justifiably rely on those misrepresentations or omissions of fact, and that the resulting debts do not satisfy this element of the tests under section 523(a)(2)(A).

b.    Actual Fraud

A different analysis is used when a creditor alleges actual fraud. In order to except a debt from discharge on the basis of actual fraud, a creditor must establish that: (1) a fraud occurred; (2) the debtor intended to defraud; and (3) the fraud created the debt that is the subject of the discharge dispute. *Jahelka*, 442 B.R. at 669; *see also Ryan*, 408 B.R. at 157; *Scarpello*, 272 B.R. at 701; *Jairath*, 259 B.R. 308, 314. The fraud exception to the dischargeability of debts in bankruptcy does not reach constructive frauds, only actual ones. *McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000); *see also Ryan*, 408 B.R. at 157. In addition, "broken promises to pay are just that, broken promises and not fraud." *Stelmokas v. Sinkuniene (In re Sinkuniene)*, Adv, No. 10ap01418, 2012 WL 4471583, at *10 (Bankr. N.D. Ill. Sept. 27, 2012) (Barnes, J.). However, if the promising party never had an intention to perform, it could constitute fraud. *See Sullivan v. Glenn (In re Glenn)*, 502 B.R. 516, 540. (Bankr. N.D. Ill. 2013) (Barnes, J.) (*citing Chriswell v. Alomari (In re Alomari)*, 486 B.R. 904, 912 (Bankr. N.D. Ill. 2013) (Schmetterer, J)).

Unlike false pretenses and false representations, "actual fraud" does not require proof of a misrepresentation or reliance. *McClellan*, 217 F.3d at 892; *see also Jahelka*, 442 B.R. at 669; *Hanson*, 432 B.R. at 771. While there is no definite rule defining fraud, "it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." *McClellan*, 217 F.3d at 893 (internal quotations omitted).

While the Plaintiff does not make out a clear case for fraud in the Complaint, it was clearly his goal to do so. This puts the court in an awkward position. While the law is clear that the court should attempt to look through the pleading deficiencies of a *pro se* plaintiff,[9] the law is equally clear that pleading fraud is subject to a higher standard than pleading in general. Fed. R. Civ. P. 9(b) (made applicable by Fed. R. Bankr. P. 7009); *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009); *Bell Atl.*

---

[9]    "Allegations of a *pro se* complaint are held 'to less stringent standards than formal pleadings drafted by lawyers…' Accordingly, *pro se* complaints are liberally construed." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (*quoting Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*)); *see also Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988).

*Corp. v. Twombly*, 550 U.S. 544, 576 (2007). In this case, because the issue of intent, as with misrepresentation and false pretenses, has not been satisfied, it does no harm to accept that it was the Plaintiff's goal to set forth a case for fraud. Presuming, therefore, that the first and third elements of fraud set forth above have been satisfied, the court turns directly to the issue of intent.

        c.    Intent

     As noted above, much of this matter turns on the issue of intent. Scienter, or intent to deceive, is a required element under section 523(a)(2)(A) whether the claim is for a false representation, false pretenses, or actual fraud. *Mayer*, 51 F.3d at 673; *Pearson v. Howard (In re Howard)*, 339 B.R. 913, 919 (Bankr. N.D. Ill. 2006) (Schwartz, J.).

     Intent to deceive is measured by the debtor's subjective intention at the time of the representations or other purportedly fraudulent conduct. *See Scarpello*, 272 B.R. at 700; *see also CFC Wireforms v. Monroe (In re Monroe)*, 304 B.R. 349, 356 (Bankr. N.D. Ill. 2004) (Schmetterer, J.). Subsequent acts of fraud or omissions do not demonstrate that the debtor had the requisite intent at the time the representations were made. *Standard Bank & Trust Co. v. Iaquinta (In re Iaquinta)*, 95 B.R. 576, 578 (Bankr. N.D. Ill. 1989) (Squires, J.).

     An intent to deceive may be established through direct evidence or inference. *Monroe*, 304 B.R. at 356 (*citing In re Sheridan*, 57 F.3d 627 (7th Cir. 1995)). Because direct proof of fraudulent intent is often unavailable, fraudulent intent "may be determined from the totality of the circumstances of a case and may be inferred when the facts and circumstances present a picture of deceptive conduct on the debtor's part." *Cent. Credit Union of Ill. v. Logan (In re Logan)*, 327 B.R. 907, 911 (Bankr. N.D. Ill. 2005) (Cox, J.) (internal quotations omitted); *see also Hanson*, 432 B.R. at 773. Thus, "[w]here a person knowingly or recklessly makes false representations which the person knows or should know will induce another to act, the finder of fact may logically infer an intent to deceive." *Glenn*, 502 B.R. at 532 (*citing Jairath*, 259 B.R. at 315).

     As discussed in detail earlier, the crux of this Adversary is whether the Debtor made such misrepresentations or omissions with the intent to deceive the Plaintiff or TIB. The Plaintiff contends that the Debtor had the intent to defraud him and TIB. The court concludes that he has failed to prove this.

     The circumstances surrounding the Plaintiff and the Debtor's business dealings suggest that the men often acted as partners in business ventures, but not necessarily with equal ownership in writing, and no indicia of the Debtor's intent to defraud the Plaintiff. The Debtor never admitted to telling the Plaintiff that he would make any filings regarding each having half ownership of the Property, and the Plaintiff did not produce evidence sufficient to call the Debtor's credibility into question on their relationship, past practices, or the interactions giving rise to the debts at issue here. The Debtor's testimony makes clear that the Plaintiff and the Debtor often conducted business wherein both would be treated as co-owners, despite a lack of understanding in writing.

     At the Trial, the Plaintiff argued in his opening statement that he was led to believe that he was a half owner of the Property and that as a result he "extended or caused to be extended a substantial amount of money, time and material." Tr. 29, Sept. 22, 2015. The Plaintiff did not reference TIB directly, nor did he allege that TIB was fraudulently induced to act. It was only on cross-examination that the Plaintiff alleged that TIB would not have performed construction

14

services but for the Debtor's deception regarding the Plaintiff's ownership status. Tr. 221, Sept. 23, 2015.

On direct examination, the Debtor's testimony did not suggest that he and the Plaintiff had worked together on the Property any differently than on previous projects, making any intent to deceive seem unlikely. The Debtor also testified that he and the Plaintiff had not reduced a previous property development project to writing, Tr. 41, Sept. 22, 2015, and further that the Debtor had told the Plaintiff that he was the sole owner of the Property, Tr. 44, Sept. 22, 2015. The Debtor also stated that he wasn't sure if he had told the Plaintiff that he would add him to the land trust through which the Debtor owned the Property. Tr. 62, Sept. 22, 2015. On cross-examination, the Plaintiff alleged that he saw a deed produced by the Debtor on which the Plaintiff was listed as co-owner, but the Plaintiff provided no other evidence to that effect. Tr. 179, Sept. 23, 2015.

Moreover, the Plaintiff did not make a clear link between any promises from the Debtor and subsequent action on the part of TIB beyond stating on cross-examination that neither he nor his wife would have put up funds unless the Plaintiff's role as co-owner was clear. Tr. 181, Sept. 23, 2015. Bailey only testified that the Plaintiff assured her of the Debtor's trustworthiness, not that the Debtor had an intent to deceive her. Tr. 119, Sept. 22, 2015. Bailey did not testify as to whether the Debtor directly made any misrepresentations to her, suggesting she relied on the Plaintiff's assurances, and not on any of the Debtor's assurances. If anything, it appears the Plaintiff induced Bailey to perform. The Plaintiff did not demonstrate that the Debtor had the intent to deceive TIB. Furthermore, the Plaintiff did not produce sufficient evidence to call the Debtor's credibility into question. The court finds no direct evidence or indicia of the Debtor's alleged intent to deceive and that, therefore, the Plaintiff has failed to prove this element.

It appears that the Plaintiff in this matter understood what was necessary to plead his case under section 523 for fraud, but he simply failed to prove the elements. For the foregoing reasons, the court finds that the Plaintiff has not established by a preponderance of the evidence that the Debtor knowingly made false representations or omissions which he knew or should have known would induce TIB to provide construction services on the Property, and the Plaintiff's debt is dischargeable.

CONCLUSION

As noted above and for the foregoing reasons, the Plaintiff has not proven his cause of action under section 523(a)(2)(A). Accordingly, judgment will be entered in favor of the Debtor on all Counts of the Complaint.

A separate Order will be issued concurrent with this Memorandum Decision.

Dated:  December 30, 2015

_____
Timothy A. Barnes
United States Bankruptcy Judge

15